UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAREQ ZAKARNEH,<br><br>                          Petitioner,<br><br>       v.<br><br>MARCO RUBIO et al.,<br><br>                          Respondents. | CASE NO. 2:26-cv-01556-DGE<br><br>ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) |

This matter comes before the Court on Petitioner Tareq Zakarneh's amended petition for writ of habeas corpus.  (Dkt. No. 11.)  Having reviewed the petition, the return memorandum (Dkt. No. 15), and the remainder of the record, the Court DENIES the writ.

## I    BACKGROUND

Petitioner filed a previous petition for writ of habeas corpus, *Zakarneh v. United States Immigration and Customs Enforcement et al.*, Case No. 2:25-cv-00707-DGE ("*Zakarneh I*"), which was denied by this Court on January 9, 2026, and has remained closed since then.  The Court refers to Dkt. Nos. 68 and 78 in *Zakarneh I* for the full factual background of Petitioner's

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) - 1

case.  This order focuses on newly alleged facts from the record in the instant matter, Case No. 2:26-cv-01556-DGE ("*Zakarneh II*").

Petitioner is a native and citizen of the Palestinian territories.  (Dkt. No. 11 at 4.)  He has been in Immigration and Customs Enforcement ("ICE") custody since May 22, 2024.  *Zakarneh I*, Dkt. No. 78 at 3.  He has been subject to a final order of removal since April 28, 2025.  *Id.*

Since the Court denied Petitioner's first habeas petition on January 9, 2026, ICE has continued to attempt to remove Petitioner to the West Bank (and apparently transferred him out of the district for a period to do so).[1]  (Dkt. No. 11 at 8–9.)  On February 3, 2026, the Board of Immigration Appeals ("BIA") denied Petitioner's motion to reconsider the denial of his previous motion to reopen, and Petitioner's stay request was denied as moot.  (Dkt. No. 16 at 2.)  On March 13, 2026, Petitioner filed another petition for review with the Ninth Circuit.  (*Id.*); *see also* Case No. 26-1537 (9th Cir. Mar. 13, 2026), Dkt. No. 1.  On April 10, the Ninth Circuit entered a temporary stay of removal under General Order 6.4, which was opposed by the Government.  Case No. 26-1537, Dkt. Nos. 9, 13.  Officer Ouk declares that on May 20, 2026, ICE scheduled a charter flight for June 9, 2026 to remove Petitioner to the West Bank through the airport in Tel Aviv, Israel.  (Dkt. No. 16 at 2.)  On May 27, 2026, the Ninth Circuit denied Petitioner's motion to stay removal.  Case No. 26-1537, Dkt. No. 19.  ICE then "moved forward with preparations for the scheduled June 9th removal."  (Dkt. No. 15 at 4.)

Around the same time, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO") in the instant matter on May 7, 2026.  (*See* Dkt. Nos. 1,

---

[1] Deportation Officer Andre Officer Ouk declares that Petitioner was unable to make a removal flight scheduled for February 1, 2026, "due to continuing medical issues."  (Dkt. No. 16 at 2.) Petitioner states he was transferred to various other ICE facilities and returned to the NWIPC on April 10, 2026, "after the war escalated in [the] [M]iddle [E]ast between Israel and Iran[.]"  (Dkt. No. 11 at 9.)

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) - 2

2.)  He did not file a new application to proceed *in forma pauperis* ("IFP"), and his original petition was deficient, so the Court ordered him to file an amended petition.  (Dkt. No. 6.)  Petitioner's IFP application was granted on May 15, 2026.  (Dkt. No. 8.)

On June 3, 2026, Petitioner was transferred from the Northwest ICE Processing Center ("NWIPC") to an ICE facility in East Montana, Texas, and then to a facility in Alexandria, Louisiana for his removal flight.  (Dkt. No. 16 at 3.)  Petitioner's amended petition was entered on the docket on June 8, 2026.[2]  (Dkt. No. 11.)  The Court issued an order that same day denying Petitioner's motion for TRO as moot and ordering Respondents to provide at least 168 hours' notice before removing Petitioner or transferring him from the district.  (Dkt. No. 13.)  Because Petitioner had already been transferred out of the district, Officer Ouk declares that on June 8, ICE canceled Petitioner's removal flight that was scheduled for June 9 to comply with this Court's order.  (Dkt. No. 16 at 3.)  ICE apparently has "imminent plans" to transfer Petitioner back to the NIWPC.[3]  (*Id.*)  ICE still seeks to remove Petitioner to the West Bank and "anticipates scheduling a removal flight in the near future if it is legally permissible to do so."  (*Id.*)

In his amended petition, Petitioner asserts his continued detention is unlawful under the framework laid out in *Zadvydas v. Davis*, 533 U.S. 678 (2001) because the six-month presumptively reasonable detention period has expired.  (Dkt. No. 11 at 12–13.)  Petitioner further argues any attempted removal to a third country violates Due Process.  (*Id.* at 14–15.)  In response, Respondents argue Petitioner's detention does not run afoul of *Zadvydas* because his

---

[2] Though the petition was docketed on June 8, it appears Petitioner submitted his amended petition via mail on or around June 2, 2026.  (*See* Dkt. No. 11 at 18.)

[3] The Court is not certain of Petitioner's current physical location.  The scheduling order sent to Petitioner was returned as undeliverable (*see* Dkt. No. 18) and Petitioner has not replied to Respondents' return memorandum.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) - 3

removal to the West Bank remains likely in the reasonably foreseeable future.  (Dkt. No. 15 at 6–7.)  Respondents further note that any request for injunctive relief regarding Petitioner's potential removal to a third country is "purely conjectural" at this time, as Respondents plan to remove him to the West Bank.  (*Id.* at 7–8.)

<b>II    LEGAL STANDARD</b>

### A.  Petition for Writ of Habeas Corpus

A writ of habeas corpus is "available to every individual detained within the United States."  *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2).  To succeed on his habeas petition, Petitioner "must show [he] is in custody in violation of the Constitution or laws or treaties of the United States."  *Doe v. Bostock*, No. C24-0326-JLR-SKV, 2024 WL 3291033, at *5 (W.D. Wash. Mar. 29, 2024), *report and recommendation adopted*, Case No. C24-0326JLR-SKV, 2024 WL 2861675 (W.D. Wash. June 6, 2024) (citing 28 U.S.C. § 2241).  Because habeas proceedings are civil in nature, the "[p]etitioner 'bears the burden of proving that he is being held contrary to law, . . . [and] he must satisfy his burden of proof by a preponderance of the evidence.'"  *Aditya W. H. v. Trump*, 782 F. Supp. 3d 691, 703 (D. Minn. 2025) (quoting *Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023) (citations omitted)).

### B.  Detention Under 8 U.S.C. § 1231

The detention, release, and removal of noncitizens subject to a final order of removal is governed by INA § 241, codified at 8 U.S.C. § 1231.  The requirements of the statute take effect once a final order of removal of a non-citizen is entered by an immigration judge.  The removal period begins, relevant here, on "[t]he date the order of removal becomes administratively final[,]" *id.* § 1231(a)(1)(B), which in this case was April 28, 2025, after the Ninth Circuit dismissed Petitioner's original appeal.  *Zakarneh I*, Dkt. No. 78 at 3.

The first 90-day period following the entry of the order of final removal is called the "removal period." *Id.* § 1231(a)(1)(A). Detention is mandatory during that period. *Id.* § 1231(a)(2). However, once the 90-day removal period has expired, continued detention is at the discretion of the Attorney General. *Id.* § 1231(a)(6). There is no statutory limit on the Attorney General's discretion to detain non-citizens beyond the 90-day period, but in *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. As the *Zadvydas* Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Id.* The *Zadvydas* Court concluded, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

### III   DISCUSSION

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). Thus, the Supreme Court has held "the Due Process Clause protects a[ ] [noncitizen] subject to a final order of deportation[.]" *Zadvydas*, 533 U.S. at 693–694 (2001) (citing *Wong Wing v. United States*, 163 U.S. 228, 238, (1896)).

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) - 5

*Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Zadvydas*, 533 U.S. at 701). If the noncitizen meets this burden, then the respondents must "introduce evidence to refute that assertion." *Id.* (first citing *Zadvydas*, 533 U.S. at 701; and then citing *Xi v. I.N.S.*, 298 F.3d 832, 839–840 (9th Cir. 2002)); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforeseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law, as construed by the Supreme Court.").

Though Petitioner has been detained for more than six months, he has not satisfied his burden to show that his removal is not significantly likely in the reasonably foreseeable future. Petitioner argues that ICE has been unable to remove him from the United States for two years (Dkt. No. 11 at 9), but he does not contend with the fact that ICE has apparently scheduled at least three removal flights in the last eight months—one as recent as June 9, 2026. *Zakarneh I*, Dkt. No. 67 at 2; (Dkt, No. 16 at 2–3). Petitioner does not offer any evidence to suggest that his removal is unlikely because of some lack of travel documents or cooperation from Israel. Petitioner notes that his Palestinian passport is expired and cites to *Thabateh v. King*, Case No. 25-cv-14018, 2026 WL 1121927 (E.D. Mich. Apr. 24, 2026), to explain that because Palestine is "under [the] colonial government of Israel, [there is] no need for any travel document[.]" (Dkt. No. 11 at 9.) In *Thabateh*, the court explained that because "Israel is generally accepting the removal of Palestinians via charter flight—'travel documents' merely refer to Israel's approval to

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) - 6

receive the specific individuals placed on a particular flight." 2026 WL 1121927, at *4. There, the court concluded the "ongoing conflict" constituted a barrier to the petitioner's removal, based in part on the Government's representation that immigration officials "'[had] not been able to schedule a flight to remove petitioner due to ongoing turmoil in the region of his removal.'" *Id.* at *5 (citation omitted).

By contrast here, Respondents have apparently had no issues scheduling removal flights for Petitioner; as they point out, "but for this Court's Order, Petitioner would have already been removed to the West Bank." (Dkt. No. 15 at 7.) The Ninth Circuit has held that the fact a petitioner's detention "[does] not have a certain end date does not change the analysis." *Diouf v. Mukasey*, 542 F.3d 1222, 1233 (9th Cir. 2008). Generally, "undue delay in removal for an individual [noncitizen] beyond the typical removal period would naturally suggest that removal is unlikely." *Chun Yat Ma v. Asher*, Case No. C11–1797 MJP, 2012 WL 1432229, at *5 (W.D. Wash. Apr. 25, 2012). But here, there is nothing in the record, nor in Petitioner's habeas petition, that suggests ICE's removal efforts will fail. Accordingly, Petitioner has not met his burden under the first step of *Zadvydas*. His petition for writ of habeas corpus is DENIED without prejudice.

Finally, Petitioner opposes any potential removal to a third country "unless and until he is provided constitutionally adequate procedures" and seeks an injunction to that effect. (Dkt. No. 11 at 15–16.) Where the government cannot remove a noncitizen to the country specified in their removal order, it may attempt to remove that person to a third country, but in doing so, it must comply with the INA, 8 U.S.C. § 1231(b), and the Due Process Clause. *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1065 (W.D. Wash. 2025) (explaining such designations "are subject to the same mandatory

protections that exist in removal proceedings."). To comply with Due Process, the government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Aden*, 409 F. Supp. 3d at 1019.

Petitioner's request for an injunction is also DENIED. As Respondents point out, there is currently no evidence ICE is attempting to remove Petitioner to anywhere other than the West Bank. (Dkt. No. 15 at 7.) "In seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 889, 987 (9th Cir. 2005) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Here, without any record evidence that ICE is attempting to remove Petitioner to a third country, injunctive relief is improper at this time. Should ICE attempt to remove Petitioner to a third country in the future, Petitioner may raise such an argument in a *new* habeas petition if he believes he can satisfy his burden under the applicable legal standards.

## IV    CONCLUSION

For the aforementioned reasons, Petitioner's petition for writ of habeas corpus (Dkt. No. 11) is DENIED without prejudice. The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Lastly, Respondents are ORDERED to file a status report informing the Court of where Petitioner is physically detained and when his removal is expected to occur. The status report shall be filed no later than July 14, 2026.

The Clerk is directed to calendar this event.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) - 8

Dated this 1st day of July 2026.

David G. Estudillo
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DKT. NO. 11) - 9